J-S01018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.F., MOTHER | : | |
| | : | |
| | : | No. 815 WDA 2022 |

Appeal from the Order Entered June 13, 2022,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s): CP-02-AP-0000232-2021.

| | | |
|---|---|---|
| IN THE INTEREST OF: E.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.F., MOTHER | : | |
| | : | |
| | : | No. 816 WDA 2022 |

Appeal from the Order Entered June 13, 2022,
in the Court of Common Pleas of Allegheny County,
Family Court at No(s): CP-02-AP-0000233-2021.

| | | |
|---|---|---|
| IN THE INTEREST OF: N.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.F., MOTHER | : | |
| | : | |
| | : | No. 817 WDA 2022 |

Appeal from the Order Entered June 13, 2022,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s):  CP-02-AP-0000231-2021.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED:  March 17, 2023**

In this matter, M.F. (Mother) appeals the order terminating her parental rights to her three children, N.B., born May 2013, J.B., born July 2014, and E.B., born February 2016, pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b).

The record[1] discloses the following factual and procedural history: Allegheny County Office of Children, Youth and Families ("the Agency") has been aware of the family since May 2013, when N.B was born, and both N.B. and Mother tested positive for marijuana.  N.B. was discharged to the care of her parents and the family's case was closed on or about June 13, 2013.  As noted above, J.B. was born in July 2014.

The family next came to the attention of the Agency in February 2016, shortly after E.B. was born.  There were concerns regarding Mother's drug use during her pregnancy, as well as Father's drug use.  Moreover, the family's

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We glean these facts and proceedings from the termination petitions as well as the joint stipulations entered at the termination hearing.  ***See infra***.

home was unsafe and in deplorable condition. After the provision of services, the case was closed on or about August 7, 2017.

The Agency most recently became involved with the family on or about August 7, 2019. At that time, the Agency received a report indicating inappropriate discipline and neglect of the children, as well as concerns of Father's drug use. For two weeks, the Agency was unsuccessful at assessing the home and family. On or about August 20, 2019, Kellie Pavilonis, an Agency caseworker, was able to make contact with both parents, but when the parents became verbally threatening, she needed to obtain police involvement to gain access to the home. After the police became involved, Ms. Pavilonis was able to see the children, but she was not able to interview them or assess the home.

On or about November 19, 2019, the parents finally permitted the Agency to access a part of the home but did not permit a complete home inspection and did not make the children available to be interviewed. On November 20, 2019, the Juvenile Court ordered the parents to complete a drug screen, sign all releases of information, enroll the one child in school, provide access to the home and the children, and to assess the home where the children were staying. After the hearing, Father tested positive for THC and Mother tested positive for suboxone, cocaine, and THC. The parents also refused to sign all needed releases of information.

Due to the family's ongoing instability and parents' failure to cooperate to ensure the children's safety, the Agency obtained an order for emergency

- 3 -

protective custody on November 20, 2019 and took legal custody of the children. The children have not return to the care of either parent since that time. At a shelter hearing on November 22, 2019, the children were ordered to remain in foster care.

All three children were adjudicated dependent on December 18, 2019. Both parents stipulated to dependency based upon substance abuse issues, inadequate housing, and the fact that the children were not up to date medically. At the dependency hearing, both parents were ordered to: 1) have drug and alcohol and mental evaluations and participate in random screens; 2) obtain appropriate housing; and 3) have liberal supervised visits at the Agency.

Upon removal, the parents were permitted to visit the children in person three days a week prior to the pandemic shutdown and then visits went to virtual three times a week. On May 14, 2020, the children's foster parents were appointed secondary medical and educational decision makers.

On November 4, 2021, Agency petitioned to terminate both Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b). The orphans' court conducted an evidentiary hearing on June 10, 2022. Counsel for the parents appeared, although neither Mother nor Father was present. Counsel was present for N.B. and E.B, while separate counsel appeared for J.B. None of the children were present.

The parties first entered eleven joint stipulations on the record. The Agency then presented the testimony from Mina Needham, the children's

foster care supervisor, and Ms. Pavilonis, the Agency's caseworker.      By order entered December 29, 2021, the court granted the Agency's petitions. Mother appealed.[2]    Both Mother and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925.

Mother presents the following issue:

> Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that [the Agency] met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the children pursuant to 23 [Pa.C.S.A.] § 2511(b)?

Mother's Brief at 10.

We review this issue mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

---

[2] Father did not appeal.

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Here, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). Mother concedes that the Agency established by clear and convincing evidence that termination was warranted under Section 2511(a). Thus, we next consider her claim that the Agency failed to present clear and convincing evidence pursuant to Section 2511(b).

Section 2511(b) provides:

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id**. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **Id.** at 763.

**In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. **See C.M.K.**, 203 A.2d at 264 (citation omitted); **see also K.Z.S.**, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). We add, the court is not required to use expert testimony to resolve the bond analysis but may rely on the testimony of social workers and caseworkers. **Z.P.**, 994 A.2d at 1121. Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when

determining what is in the best interest of the child." **In re N.A.M.**, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

Here, the orphans' court determined that it based its Section 2511(b) determination on the "credible testimony" of Ms. Needham and Ms. Pavilonis. Orphans' Court Opinion, 9/30/22, at 3. The court then noted Ms. Needham's opinion that "she did not think any of the three children would be detrimentally affected" if Mother's parental rights were terminated, as well as her belief that the children were more bonded to the foster parents "than they are with [Mother.]" **Id.** at 7.

The orphan's court also credited Ms. Pavilonis' testimony concerning the existence of a bond between the children and Mother. Ms. Pavilonis testified that the children have a strong bond with their foster parents and the cessation of that bond would be detrimental to the children. **See** N.T., 6/10/22, at 18.

After review, we conclude the court did not abuse its discretion when it found that termination would best serve the children's needs and welfare under Section 2511(b). In arguing that the Agency did not meet its burden, Mother asserts that, Ms. Needham and Ms. Pavilonis had only "observed Mother with the Children a total of three times." Mother's Brief at 20. According to Mother, these witnesses presented by the Agency "simply opined that termination of [her] parental rights would not have a detrimental impact on the Children because [she] did not visit consistently, and because the

Children did not appear as bonded with [her] as they appeared to be with foster parents." *Id.* We disagree.

Testimony from Ms. Needham and Ms. Pavilonis regarding the presence of a parental bond was proper under the pertinent case law. *Z.P.*, *supra*. Moreover, as Mother did not appear at the termination hearing, no evidence was presented to contradict their testimony. Counsel for J.B. informed the court that J.B. wished to be adopted by his foster parents. Although counsel for N.B. and E.B. did not mention their desire to be adopted, he informed the court that, unequivocally, the children wished to remain in foster care with their brother. *See* N.T., 6/10/22, at 61-63.

As noted above, we may not disturb the orphans' courts credibility determinations when they are supported by the record. *T.S.M.*, *supra*. As our review of the record supports the court's determination that the Agency presented clear and convincing evidence, pursuant to Section 2511(b), that termination would best serve the needs and welfare of the children. We therefore affirm the orphans' court order terminating Mother's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/17/2023</u>